No. 2--06--0578                    filed: 1/11/07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| DAVID BOLGER, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 05--AR--3650 |
| | ) | |
| NAUTICA INTERNATIONAL, INC., | ) | Honorable |
| | ) | Kenneth A. Abraham, |
| Defendant-Appellee. | ) | Judge, Presiding. |

PRESIDING JUSTICE GROMETER delivered the opinion of the court:

David Bolger, a resident of Illinois, appeals the dismissal of his complaint against Nautica International, Inc., a Florida company, for lack of personal jurisdiction. The sole issue on appeal is whether Nautica, a nonresident seller who sold a boat to Bolger, had sufficient contacts with Illinois to allow the trial court to exercise personal jurisdiction over it. We determine that Nautica did not have the requisite contacts with Illinois to allow the trial court to exercise personal jurisdiction over it. Accordingly, we affirm.

I. BACKGROUND

This appeal arises from a breach of contract action that Bolger filed in Illinois against Nautica. Nautica is a company headquartered in Miami, Florida, that manufactures custom inflatable boats

based on specifications provided by its customers.  On average, it sells one to four custom boats to Illinois residents each year.  It does not maintain offices or advertise in Illinois.

In March 2004, Bolger asked a yacht manufacturer in New York to contact Nautica and inquire about its products.  The manufacturer contacted Julie Marshall, a Nautica representative in Florida, and told her that several of its customers, including Bolger, would be contacting her about Nautica products for their yachts and requested that they receive a discount.  On March 22, Bolger personally contacted Marshall to inquire about terms and prices.  He also told Marshall that he would be coming to a boat show in Florida.  Nautica sent a price quote through e-mail to Bolger's office in Illinois.

Bolger traveled to Florida to see the boat.  During the trip, he met with Marshall, informed her that he was a Chicago-area resident, and told her that he wanted the boat shipped to Italy for installation on a yacht that was being built there.  After his return, Bolger sent a fax from his Illinois office inquiring about shipping options.  Nautica sent a return fax addressing the questions.

Bolger and Nautica entered into a purchase agreement for the sale of the boat.  Bolger signed the quote that Nautica provided and faxed it to Nautica from his office in Illinois.  He also remitted payment from Illinois to Nautica in Florida.  Nautica sent an invoice to Bolger's home in Illinois.  The purchase contract included the terms "FOB Pembroke Pine, FL USA," and "all sales made FOB point of shipment."  It also included the statement that "[t]his agreement shall be deemed executed in Miami-Dade County, Florida and shall be construed and interpreted according to the laws of the State of Florida."

Bolger became concerned about Nautica's ability to meet his size and weight specifications and expressed those concerns to Marshall, who he alleged did not address them.  When the boat was

shipped to Italy, Bolger alleged it was too heavy to meet his needs. On May 20, 2004, he sent an e-mail from Illinois to both Marshall and Nautica's sales manager in Florida, terminating the purchase and demanding return of his money.

On May 23, 2004, Bolger informed Nautica by e-mail that he found a colleague who was willing to purchase the boat and ship it from Italy to Chicago at his own expense. Bolger made a settlement proposal, suggesting that Nautica absorb the cost of the initial shipping to Italy and apply Bolger's money to a new boat that would meet his expectations. Nautica rejected the proposal, and the parties continued to communicate through e-mail about the matter.

Bolger next retained legal counsel in Illinois, who communicated with Nautica via telephone and fax. In July 2004, Nautica offered to refund Bolger's money, provided that Bolger agreed to pay the cost of shipping the boat back to Florida. Bolger responded that he was declining the offer because he was having the boat shipped to Chicago.

In August 2004, the parties entered a settlement agreement. Bolger agreed to pay the initial cost of shipping the boat from Miami to Italy. Nautica agreed to pay for shipping the boat back to the United States and to apply Bolger's money to the cost of a new boat built to his specifications. During negotiations, e-mails and faxes were exchanged between Illinois and Florida. The contract was printed on letterhead of the office of Bolger's attorneys in Illinois and sent to Nautica's counsel in Florida. Nautica later stated that it was unable to build the boat.

Bolger filed a complaint for breach of contract in Illinois. Nautica moved to dismiss under section 2--301 of the Code of Civil Procedure, arguing that it was not subject to personal jurisdiction in Illinois. 735 ILCS 5/2--301 (West 2004). Based on affidavits and documentary evidence

submitted by the parties, the trial court granted the motion, holding that Bolger failed to establish a prima facie case for jurisdiction. The court stated in part:

"The information before the Court does not substantiate there's proper contact with the state for the Court to have jurisdiction. The fact that boats are sold to people who happen to be Illinois residents. [sic] I'm reminded of the many people I know who are Illinois residents, but, in fact, have residences in Florida. And that doesn't mean, because an Illinois resident buys a boat, that necessarily creates a series of contacts."

The court issued an order identified as a final judgment based solely on jurisdictional grounds. Bolger appeals.

## II. ANALYSIS

Bolger contends that the trial court could exercise personal jurisdiction over Nautica because Nautica entered into a contract for a custom-made boat with a known Illinois resident and sent numerous pieces of correspondence to Illinois.

### A. Standard of Review

The plaintiff has the burden of proving a prima facie case for jurisdiction when seeking jurisdiction over a nonresident defendant. Keller v. Henderson, 359 Ill. App. 3d 605, 610 (2005); Spartan Motors, Inc. v. Lube Power, Inc., 337 Ill. App. 3d 556, 559 (2003). When, as here, the trial court decides the issue of personal jurisdiction based solely on documentary evidence, our review is de novo. Keller, 359 Ill. App. 3d at 611. In reviewing affidavits and pleadings, we resolve conflicts between the documents in the plaintiff's favor for purposes of determining whether a prima facie case for jurisdiction has been shown. Keller, 359 Ill. App. 3d at 611. A plaintiff's prima facie case for

jurisdiction can be overcome by a defendant's uncontradicted evidence that defeats jurisdiction. Keller, 359 Ill. App. 3d at 611.

## B. Personal Jurisdiction

Section 2--209(c) of the long-arm statute allows an Illinois court to exercise personal jurisdiction on any basis permitted by the Illinois Constitution and the Constitution of the United States. 735 ILCS 5/2--209(c) (West 2004). Thus, the long-arm statute has been held to be coextensive with the due process requirements of the Illinois and United States Constitutions. See G.M. Signs, Inc. v. Kirn Signs, Inc., 231 Ill. App. 3d 339, 342 (1992).

"Federal due process analysis[1] requires a three-prong analysis consisting of whether (1) the nonresident defendant had 'minimum contacts' with the forum state such that there was 'fair warning' that the nonresident defendant may be haled into court there; (2) the action arose out of or related to the defendant's contacts with the forum state; and (3) it is reasonable to require the defendant to litigate in the forum state." Keller, 359 Ill. App. 3d at 613; see Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-77, 85 L. Ed. 2d 528, 540-44, 105 S. Ct. 2174, 2181-84 (1985). At issue in this appeal is the first prong--whether Nautica had sufficient minimum contacts with Illinois so that Illinois courts can assert personal jurisdiction over it.

---

[1]In Keller, we noted that "in almost all cases, when federal due process concerns regarding personal jurisdiction are satisfied, so are Illinois due process concerns." Keller, 359 Ill. App. 3d at 620. Thus, because there was no contention that the analyses diverged, we held that "because federal due process concerns have been satisfied in this case, so have Illinois due process concerns." Keller, 359 Ill. App. 3d at 620. Similarly, neither party in this case asserts that the analyses diverge. Thus, we address only the federal due process standard.

1. Minimum Contacts

Bolger contends that the necessary minimum contacts existed because Nautica had a systematic presence in Illinois through the sale of its boats, and because it sent correspondence to Illinois. He also points to Nautica's knowledge that he was a resident of Illinois and to Nautica's formation of a sale contract and settlement agreement with him while he was residing in Illinois.

In order for personal jurisdiction to comport with federal due process requirements, the defendant must have certain minimum contacts with the forum state such that maintaining the suit there does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158 (1945); Keller, 359 Ill. App. 3d at 612. The minimum contacts required for personal jurisdiction must be based on some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. Burger King Corp., 471 U.S. at 475, 85 L. Ed. 2d at 542, 105 S. Ct. at 2183; Keller, 359 Ill. App. 3d at 612-13. "The purposeful availment requirement exists so that an 'alien defendant will not be forced to litigate in a distant or inconvenient forum solely as a result of random, fortuitous, or attenuated contacts or the unilateral act of a consumer or some other third person.'" Keller, 359 Ill. App. 3d at 613, quoting Spartan Motors, 337 Ill. App. 3d at 561, citing Burger King Corp., 471 U.S. at 475, 85 L. Ed. 2d at 542, 105 S. Ct. at 2183.

"The 'minimum contacts' required for personal jurisdiction differ depending on whether general jurisdiction or specific jurisdiction is being sought." Keller, 359 Ill. App. 3d at 613. Bolger argues that both general and specific jurisdiction are present.

a. General Jurisdiction

General jurisdiction can be found when the defendant has continuous and systematic general business contacts with the forum. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416, 80 L. Ed. 2d 404, 412, 104 S. Ct. 1868, 1873 (1984); Keller, 359 Ill. App. 3d at 613. Illinois limits general jurisdiction over nonresidents to instances in which the nonresident was present and doing business in the forum. Roiser v. Cascade Mountain, Inc., 367 Ill. App. 3d 559, 562 (2006). That standard requires a nonresident defendant to carry on business activity in Illinois, not occasionally or casually, but with a fair measure of permanence and continuity. Roiser, 367 Ill. App. 3d at 562. The standard is quite high and means that " '[i]n effect, the foreign corporation has taken up residence in Illinois and, therefore, may be sued on causes of action both related and unrelated to its activities in Illinois.' " Roiser, 367 Ill. App. 3d at 563, quoting Riemer v. KSL Recreation Corp., 348 Ill. App. 3d 26, 35 (2004). We have held that transient contact, such as attendance at trade shows, advertising, or the mere solicitation of customers, is insufficient to establish general jurisdiction. See Spartan Motors, 337 Ill. App. 3d at 562.

Here, Nautica does not have continuous and systematic contacts with Illinois. It does not maintain offices in Illinois, and there is no evidence of direct marketing in Illinois. The record shows sales of one to four boats each year in Illinois. There is no evidence of travel by members of the company to Illinois. It cannot be said that Nautica carries on business activities in Illinois with any degree of permanence and continuity. Therefore, the courts of Illinois cannot exercise personal jurisdiction over Nautica under a general jurisdiction theory.

### b. Specific Jurisdiction

A court has specific jurisdiction over a defendant if the suit arises out of or relates to the defendant's contacts with the forum state. Keller, 359 Ill. App. 3d at 613. For specific jurisdiction,

the suit must " 'directly arise out of the contacts between the defendant and the forum.' " Keller, 359 Ill. App. 3d at 613, quoting Spartan Motors, 337 Ill. App. 3d at 561.

> " 'At a minimum, the court must find an act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. [Citation.] The focus is on the defendant's activities within the forum State, not on those of the plaintiff.' " Campbell v. Mills, 262 Ill. App. 3d 624, 627 (1994), quoting Sackett Enterprises, Inc. v. Staren, 211 Ill. App. 3d 997, 1004 (1991).

An individual's contract with a nonresident defendant alone does not automatically establish the requisite minimum contacts. G.M. Signs, 231 Ill. App. 3d at 343. Instead, the factors a court considers to determine whether a defendant has sufficiently transacted business in Illinois so as to have purposefully availed him or herself of the benefits of Illinois law are: (1) who initiated the transaction; (2) where the contract was formed; and (3) where performance of the contract was to take place. Viktron Ltd. Partnership v. Program Data, Inc., 326 Ill. App. 3d 111, 117 (2001); Campbell, 262 Ill. App. 3d at 628. Further, "a choice of law provision, although not by itself a sufficient basis to determine jurisdiction, is relevant." Morecambe Maritime, Inc. v. National Bank of Greece, S.A., 354 Ill. App. 3d 707, 713 (2004), citing Burger King Corp., 471 U.S. at 482, 85 L. Ed. 2d at 547, 105 S. Ct. at 2187.

In cases involving a contract for the sale of goods, courts have found the exercise of personal jurisdiction appropriate when the nonresident defendant actively initiated the transaction, or when a portion of the contract performance was carried out in Illinois. See, e.g., Keller, 359 Ill. App. 3d at 618-19. But where the plaintiff-buyer initiated a purchase and the contract was performed in the defendant's state, jurisdiction has been found to be lacking. See, e.g., Excel Energy Company, Inc.

v. Pittman, 239 Ill. App. 3d 160, 164 (1992); see also Forrester v. Seven Seventeen HB St. Louis Redevelopment Corp., 336 Ill. App. 3d 572, 581 (2002); Campbell, 262 Ill. App. 3d at 628-29.

For example, the facts of this appeal are similar to those of Excel Energy, where jurisdiction was found to be lacking. In Excel Energy, the plaintiffs filed suit against an Oklahoma company, alleging breach of warranty and deceptive business practices in connection with the sale of oil and gas equipment. The defendant advertised in a publication with national circulation, there was telephone communication between the parties, and the defendant sent a repair person to Illinois to attempt to solve problems with the equipment. The sale itself, however, was initiated by the plaintiffs, and they took delivery of the equipment in Oklahoma. The trial court denied the defendant's motion that argued a lack of personal jurisdiction. On appeal, the Fifth District reversed. Noting that the plaintiffs chose to initiate contact with a nonresident defendant, chose to do business in a foreign state, and chose to travel to Oklahoma to complete the purchase, the court held that it would be inconsistent with due process to require the defendant to litigate in Illinois. Excel Energy, 239 Ill. App. 3d at 164; see also Forrester, 336 Ill. App. 3d at 581 (advertising and general contact with customer in Illinois insufficient where customer chose to travel to defendant's state); Campbell, 262 Ill. App. 3d at 628-29 (personal jurisdiction lacking where plaintiff initiated purchase, and the sale, negotiations, and contract performance were executed in another state).

In comparison, where a nonresident seller performs activity in Illinois in substantial furtherance of the terms of a contract, even one that is executed outside of Illinois, the due process requirements for the exercise of personal jurisdiction are satisfied. E.A. Cox Co. v. Road Savers International Corp., 271 Ill. App. 3d 144, 150 (1995). In E.A. Cox, the plaintiff contacted a nonresident defendant about purchasing equipment and took partial delivery in the defendant's state.

The contract, however, included a provision requiring the defendant to provide specialized training in Illinois, and the defendant delivered some of the equipment to Illinois. On appeal, the Fourth District held that when the defendant entered into a contract that contemplated part performance in Illinois and later entered the state to perform acts in furtherance of the contract, it availed itself of the privilege of doing business in Illinois and invoked the benefits and protections of its laws. E.A. Cox, 271 Ill. App. 3d at 150; see also Viktron, 326 Ill. App. 3d at 121-22 (defendant entered Illinois to negotiate contract and performed substantial amount of the contract in Illinois).

Here, although various pieces of communication were sent by both parties between Illinois and Florida, Nautica did not reach into Illinois and purposefully avail itself of the benefits and protections of its laws. Instead, it was Bolger who initiated the purchase of the boat. Bolger chose to travel to Florida in furtherance of making the purchase, and Bolger chose to enter into a contract containing a choice of law provision plainly stating that the contract was deemed executed in Florida. The contract contemplated performance in Florida, and delivery took place in Florida and Italy. Nautica did not enter Illinois, and the contract did not contemplate that it would ever do so. This appeal presents even less of a basis for the exercise of jurisdiction than did the facts of Excel Energy, where jurisdiction was found to be lacking. Excel Energy, 239 Ill. App. 3d at 164.

Bolger argues, however, that the focus should be on the settlement agreement, and not the initial contract. But Bolger also admits that neither party could be said to have initiated the settlement agreement. Further, the settlement agreement arose out of Bolger's initial choice to pursue the purchase agreement in Florida, and he has not shown how the settlement agreement contemplated any sort of presence or performance by Nautica in Illinois. Instead, that agreement contemplated further performance, through the building of a new boat, in Florida.

III. CONCLUSION

We determine that Nautica lacked the necessary minimum contacts with Illinois. Thus, it did not purposefully avail itself of the benefits and protections of Illinois law, and the trial court properly determined that it could not exercise personal jurisdiction over it. Accordingly, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

McLAREN and GILLERAN JOHNSON, JJ., concur.